O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MELBA GAUCI,

            Plaintiff,

    v.

CITI MORTGAGE, et al.,

           Defendants.

Case No. 2:11-cv-01387-ODW(JEMx)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [67]**

## I.   INTRODUCTION

Before the Court is Defendant credit reporting agencies Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC's (collectively "CRAs") February 16, 2012 Motion for Summary Judgment. (ECF No. 67.) Plaintiff filed an Opposition on March 26, 2012, to which the CRAs filed the Reply on April 2, 2012. (ECF Nos. 87, 89.) The Court has carefully considered the parties' briefs, the evidence submitted in support of and in opposition to those briefs, and the parties' presentations made at oral argument on April 16, 2012, and April 30, 2012. For the following reasons, the Court **GRANTS** the CRAs' Motion.

## II.   FACTUAL BACKGROUND

In 2008, Plaintiff Melba Gauci obtained a mortgage loan from Callisto Group, Inc. to finance the purchase of property located at 301 South Weymouth Avenue, Los Angeles, California 90732. (Def.'s Statement of Uncontroverted Facts ("UF") 1.)

Plaintiff is a real estate broker and purchased this property as an investment. (Gauci Depo. 14:2–22, 16:19–22, 26:10–14.) As part of the purchase, Plaintiff authorized Callisto to create an impound account, from which property taxes and property insurance would be paid. (UF 3.) Callisto estimated Plaintiff's annual property taxes would be approximately $3,800.00 per year, and on that basis estimated that Plaintiff's total monthly mortgage payment would be $2,211.02.[1] (*Id.*; Opp'n 6.) Once the loan closed, Callisto sold Plaintiff's loan to CitiMortgage, and CitiMortgage became the successor in interest to Callisto's duties and obligations. (UF 2.)

Plaintiff began making her mortgage payments in November 2008. The same month, the County of Los Angeles charged CitiMortgage for the first property tax payment, which was $8,957.04 instead of the originally estimated $3,800.00. (UF 5.) As a result, CitiMortgage raised Plaintiff's impound account payment from $398.00 to $1,285.00 to reflect this increase. (UF 7.) On January 23, 2009, CitiMortgage notified Plaintiff that her mortgage payments would increase from $2,211.02 to $3,098.61[2] on March 1, 2009, to reflect the increased escrow payments. (UF 6–7.)

In February 2009, after receiving her March 2009 bill reflecting the increased mortgage payments, Plaintiff called CitiMortgage to dispute the increase in payments. (UF 11–12.) Meanwhile, Plaintiff ignored the change to her bills and continued paying the original, lower monthly payment. (UF 14.) While CitiMortgage maintains that it never told Plaintiff to pay this lower amount (UF 13), Plaintiff contends that she was informed over the phone that she should be paying $2,211.02 instead of $3,098.61. (Gauci Depo. 75:19–24.) Regardless, when Plaintiff paid less than the $3,098.61 payment allegedly due, CitiMortgage would allocate Plaintiff's lower payment to an "unapplied funds" account; once the unapplied funds accumulated to the sufficient amount, CitiMortgage would post a full payment to Plaintiff's impound

---

[1] Comprising $398.00 for the escrow account and $1,813.02 for principal and interest.
[2] Comprising the new $1,285.00 for the escrow account and the original $1,813.02 for principal and interest.

account.  (UF 15.)   Proceeding in this fashion, CitiMortgage ultimately deemed Plaintiff a delinquent payer and reported Plaintiff to the CRAs as such.  (UF 16; Opp'n 7.)

Plaintiff contends that the County incorrectly assessed the property taxes based on an inflated property value.  (Pl.'s Statement of Genuine Disputes 9–10, 16–17.) Notwithstanding her dispute regarding the propriety of the property tax increase, Plaintiff admits that CitiMortgage correctly calculated her new escrow and mortgage payments based on the disputed property tax increase.  (*Id.*)  Plaintiff also admits that she must pay CitiMortgage for the property taxes that CitiMortgage paid to the Country.  (UF 21.)  At the same time, however, Plaintiff insists that she should have paid the initially estimated amount escrow payments.  (Pl.'s Statement of Genuine Disputes 9–10, 16–17.)

After CitiMortgage reported to the CRAs that Plaintiff was past due on payments, the CRAs downgraded Plaintiff's credit rating to delinquent, which Plaintiff contends prevented her from obtaining other loans to purchase other properties or refinance her existing loans.  (Opp'n 7.)  While Plaintiff repeatedly communicated with the CRAs to contest CitiMortgage's report in an effort to clear her records, her credit rating status remained the same, even after the CRAs conducted reinvestigations.  (UF 30–39.)  According to Plaintiff, while she reported her dispute with CitiMortgage to the CRAs, the CRAs' investigations were "cursory and not responsive to [Plaintiff's] concerns."  (Opp'n 7.)

As a result, Plaintiff brought this lawsuit against CitiMortgage and the CRAs in Los Angeles County Superior Court on December 16, 2010.  On February 15, 2011, Defendants removed the action to this Court.  (ECF No. 1.)  Plaintiff alleges that the CRAs violated the Fair Credit Reporting Act ("FCRA") by failing to properly investigate her credit history before lowering her rating and by failing to alter her rating after Plaintiff provided them with additional information.  (SAC ¶¶ 26–27.)

The CRAs now move for summary judgment on Plaintiff's FCRA claims. (ECF No. 67.)

### III. LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence—viewed in the light most favorable to the nonmoving party—demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Evidence the Court may consider includes the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the nonmoving party's version, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587; *Celotex*, 477 U.S. at 323–34; *Liberty Lobby*, 477 U.S. at 248. Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at

248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (finding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Further, it is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## IV. DISCUSSION

Plaintiff's sole claim against the CRAs alleges willful violations of the FCRA. Plaintiff contends that the CRAs failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C. § 1681e(b) and failed to conduct a reasonable investigation of Plaintiff's disputes in violation of 15 U.S.C. § 1681i(a). (SAC ¶¶ 86–124.)

The CRAs move for summary judgment on grounds that (1) Plaintiff's credit report was accurate; (2) Plaintiff's dispute over the CitiMortgage reporting is an

impermissible collateral attack on her dispute with CitiMortgage; and (3) pursuant to the FCRA, the CRAs conducted reasonable reinvestigations and maintained reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report. Plaintiff argues that material issues of triable fact exist as to each of the above grounds sufficient to deny the CRAs' Motion.

The outcome of this Motion turns on the threshold issue whether Plaintiff's credit reports were accurate within the meaning of FCRA. The remaining issues—whether the CRAs' reporting and reinvestigation procedures were reasonable—are typically jury questions inappropriate for resolution on a motion for summary judgment. Accordingly, the Court considers only whether Plaintiff's credit reports were accurate under the FCRA.

### A. LEGAL STANDARD FOR FCRA CLAIMS

The purpose of the FCRA is to protect consumers from circulation by consumer credit reporting agencies of inaccurate information about consumers to lending institutions. 15 U.S.C. § 1681. As a consumer bringing actions under FCRA, Plaintiff in this case asserts two claims. First, Plaintiff alleges that the CRAs violated § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer's credit report. Second, Plaintiff alleges that the CRAs violated § 1681i(a) by failing to conduct reasonable reinvestigation of information disputed by the consumer.

To establish a prima facie violation under § 1681e(b), a plaintiff must first present evidence demonstrating that a credit reporting agency prepared a report containing inaccurate information. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). If the plaintiff establishes an inaccuracy, a credit reporting agency can nonetheless escape liability by establishing that it followed reasonable procedures. *Id.* The reasonableness of the procedures and whether the credit reporting agency followed those procedures will be jury questions in the

overwhelming majority of cases. *Id.* If the plaintiff fails to satisfy the initial burden of showing inaccuracy, the plaintiff has not established a violation of § 1681e(b) as a matter of law, and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency. *Cahlin*, 936 F.2d at 1156.

To proceed on a claim under § 1681i(a), a plaintiff must show that her credit report contained an actual inaccuracy. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). When the plaintiff fails to establish an actual inaccuracy, courts may properly grant summary judgment in favor of credit reporting agency defendants. *See id.* at 892.

Accurate reporting by a credit reporting agency is thus a complete defense to claims under both § 1681e(b) and § 1681i(a). If a plaintiff fails to show that the plaintiff's credit report was inaccurate, summary judgment should be granted to the credit reporting agency defendant. However, if a plaintiff does overcome that initial threshold, the next questions with respect to the reasonableness of a credit reporting agency's reporting and reinvestigation procedures are for a jury to decide, and summary judgment should be denied.

**B.   WHETHER PLAINTIFF'S CREDIT REPORTS WERE INACCURATE UNDER THE FCRA**

The Court turns now to the threshold issue whether Plaintiff has established that the CRAs' credit reports were inaccurate within the meaning of the FCRA.

*1.   Legal standard under the FCRA*

In the Ninth Circuit, credit reports are considered accurate under the FCRA where the credit reporting agencies correctly report information furnished by the creditor, even when there is a pending legal dispute between plaintiff and creditor as to the validity of the debt. In *Carvalho*, the Ninth Circuit explained the standard for considering whether a consumer's credit report was inaccurate within the meaning of the FCRA. There, the plaintiff filed FCRA claims against the credit reporting agencies. In deciding the threshold question whether the consumer plaintiff's credit

report was accurate, the Ninth Circuit adopted a "patently incorrect or materially misleading" standard. *Carvalho*, 629 F.3d at 890.

The *Carvalho* court found no *patent* error in the plaintiff's credit report because all of the relevant facts—including the ownership of the debt, the amount past due, and the listed dates—were correctly reported. *Id.* However, the plaintiff claimed the inaccuracy was *latent*, arguing that even if technically accurate, the credit report was misleading because she was not legally obligated to pay the debt. *Id.* The plaintiff contended that credit reporting agencies unfairly maligned the creditworthiness of innocent consumers by reporting disputed debts without undertaking a searching inquiry into the plaintiff's legal defenses to payment. *Id.*

The Ninth Circuit squarely denied this argument and unmistakably stated that credit reporting agencies are neither qualified nor obligated to resolve such an issue. *Id.* at 891–92. "Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.* at 891. Simply put, the credit reports are considered accurate when the credit reporting agencies correctly report information furnished by the creditor. *See id.* Indeed, that a consumer has defaulted "is certainly relevant to potential creditors and is precisely the type of information that a credit report is meant to supply," regardless how legally sound the consumer's reasons for default are. *Id.* at 891.

2.  *Plaintiff's credit reports were accurate within the meaning of FCRA*

Plaintiff argues that "CMI had no right to have deemed Plaintiff a delinquent payer when CMI made the mistake of charging Plaintiff an incorrect amount of taxes." (Opp'n 11.) In addition, because there is a pending dispute between CitiMortgage and Plaintiff as to the correct amount of Plaintiff's debt, and because Plaintiff reported this dispute to the CRAs, the CRAs should have reinvestigated and restored her credit ratings. (*Id.*) Thus Plaintiff concludes that the CRAs violated the FCRA by failing to

reasonably ensure the maximum possible accuracy of Plaintiff's credit reports, and by failing to conduct reasonable reinvestigation after Plaintiff reported the dispute. (*Id.*)

Plaintiff essentially contends that, after she informed the CRAs the ongoing dispute between her and CitiMortgage, the CRAs should have adjudicated that dispute before reporting her credit rating as delinquent. But *Carvalho* has squarely rejected this argument. *Carvalho* has clearly settled that, under the FCRA, a credit reporting agency's job is to correctly report information furnished by the creditor, and credit reporting agencies are not supposed to adjudicate a consumer-creditor dispute in order to issue credit reports. *See Carvalho*, 629 F.3d at 891–92. When a credit reporting agency correctly reports the information furnished by the creditor, the credit report is considered as "accurate" within the meaning of the FCRA, even when there is an ongoing dispute as to the validity of the debt. *Id.* Under that circumstance, the consumer is obligated to pay the full amount on time; if she fails to do that and the creditor furnishes the information to the credit reporting agency, all the credit reporting agency needs to do is to correctly report the furnished information. *Id.* That is exactly what happened in this case: even though Plaintiff disputed the payments she owed to CitiMortgage, the CRAs did correctly report the information furnished by CitiMortgage. Therefore, CRAs' credit reports are accurate within the meaning of FCRA.

3.   *The FCRA affords Plaintiff no remedy in this case*

*Carvalho* advises that a consumer who disputes the legal validity of a debt should do so directly at the furnisher level. *Carvalho*, 629 F.3d at 891. Plaintiff's proper recourse here is to resolve her dispute directly with CitiMortgage; only had a court ruled Plaintiff's debt to CitiMortgage invalid and the CRAs had continued to report it as a valid debt would Plaintiff have had grounds for a FCRA claim against the CRAs. *Id.* at 891–92. However, because CRAs' credit reports are considered accurate under the FCRA, and because Plaintiff has not resolved the dispute with

CitiMortgage, the FCRA does not afford Plaintiff a remedy to restore her credit ratings.

In sum, the material facts in this case reveal that the CRAs correctly reported information CitiMortgage furnished to them. Although Plaintiff disputes the amount of the debt on which CitiMortgage alleges Plaintiff defaulted, that dispute does not render the information the CRAs reported "inaccurate" under the FCRA. Further, the CRAs were not charged with resolving Plaintiff's dispute with CitiMortgage. The Court therefore **GRANTS** the CRAs' Motion for Summary Judgment. It is therefore not necessary to reach the question whether the CRAs' reporting and reinvestigation procedures were reasonable.

## V. CONCLUSION

For the reasons discussed above, the CRAs' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

April 30, 2012

_____
**HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**